UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

INNA IOULEVITCH,

          Petitioner,

  -against-

UNITED STATES OF AMERICA,

          Respondent.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-22-14

13 Civ. 2003 (PAC)
10 Cr. 915 (PAC)

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

*Pro se* Petitioner Inna Ioulevitch ("Ioulevitch") moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence because her counsel was constitutionally ineffective. Ioulevitch pleaded guilty, without the benefit of a plea agreement, to nine counts of a superseding indictment charging her with bank fraud, access device fraud, and aggravated identity theft in violation of 18 U.S.C. §§ 1344, 1029(a)(2), and 1028a with regard to three separate victims. She was sentenced to an aggregate of 54 months of imprisonment and three years of supervised release.

With respect to her plea, Ioulevitch claims her attorneys:

(1) failed to negotiate and obtain a proper plea deal for her (*id.* ¶¶ 12, 14–15);

(2) failed to obtain an interpreter (*id.* ¶ 24);

(3) were tardy and missed deadlines (*id.* ¶¶ 8, 16, 19, 25, 26);

(4) misrepresented to her the length of time she would be imprisoned if she pleaded guilty (Def. Aff. ¶ 13, 17, 32); and

(5) failed to present potentially exculpatory evidence (*id.* ¶¶ 6, 7, 28, 31).

1

With respect to her sentencing, Ioulevitch claims that her attorneys:

(1) failed to explain and correct the Pre-Sentence Report ("PSR") (*id.* ¶¶ 8, 20, 33)

(2) failed to move for a downward departure from the sentencing guidelines (*id.* ¶ 15); and

(3) failed to seek a competency hearing (*id.* ¶ 21).

In addition to the § 2255 motion, Ioulevitch also seeks the following additional relief:

(1) leave to amend her § 2255 motion (Cr. Dkt. No. 50, Cv. Dkt. No. 9)

(2) relief based on gender-based sentencing disparities (Cr. Dkt. No. 53, Cv. Dkt. No 15);

(3) a reduction of her sentence (Cv. Dkt. No. 16);

(4) appointment of counsel for her § 2255 motion (Cr. Dkt. No. 46; Cv. Dkt. No 5);

(5) leave for discovery (Cr. Dkt. No. 47; Cv. Dkt. No. 6); and

(6) release pending adjudication of her motion (Cr. Dkt. No. 48; Cv. Dkt. No. 7).

Ioulevitch's motions are denied.

## BACKGROUND

On February 28, 2010, Ioulevitch was charged in a nine-count superseding indictment (the "Superseding Indictment"). On July 27, 2011 she pleaded guilty without the benefit of a plea agreement. A Presentence Investigation Report ("PSR") was submitted on December 7, 2011. Sentencing was imposed on January 17, 2012.

According to the PSR, Ioulevitch stole the identity of Victim 1, her neighbor, when Victim 1 went on vacation and asked Ioulevitch to collect her mail (PSR ¶¶ 18-19). Ioulevitch used Victim 1's personal information to obtain business loans and credit card accounts for a shell company that Ioulevitch acquired in Victim 1's name (PSR ¶¶ 18, 21). Ioulevitch falsely

claimed the shell company was a furniture company with sales in excess of $1 million, when in reality it was a defunct wholesale auto company with no gross sales or income. (PSR ¶ 21.) Ioulevitch impersonated Victim 1 to acquire the loans. (PSR ¶ 23.)

Ioulevitch defrauded Victim 2, a woman she met through a mutual acquaintance, by convincing her to act as a co-signer on a loan application for another shell company called Kwik Abstract. Ioulevitch told Victim 2 that Ioulevitch did not have good credit and therefore needed Victim 2 to sign loan applications. (PSR ¶ 25.) Ioulevitch used Victim 2's identification without her authorization, listed her as preparer of documents Ioulevitch sent to Chase Bank to obtain the loans, and falsified tax reports indicating that Victim 2 made an annual salary of $90,000 as "president" of Kwik Abstract. (*Id.*)

Ioulevitch also used the name of Victim 3, Ioulevitch's former sister-in-law, without her authorization, to open a credit card account in the name of a shell company called Ital Express, as well as several checking accounts. (PSR ¶¶ 28, 29, 33.)

The PSR also disclosed a separate occurrence in which Ioulevitch allegedly convinced another putative victim, Ashley Meccarielli, to invest $200,000 in a Russian "fish bone meal" factory. (PSR ¶ 52.) According to Meccarielli, Ioulevitch never paid her any return on her investment. (*Id.*) Ioulevitch's conduct in regards to Meccarielli was not charged as a separate offense.

The Government never offered Ioulevitch a plea bargain; instead it provided a *Pimentel* letter, dated July 27, 2011, setting forth its position on the application of the Sentencing Guidelines to the offenses charged. On July 27, 2011, Ioulevitch pleaded guilty to the counts of bank fraud, access device fraud, and aggravated identity theft charged in the Superseding Indictment. At her plea hearing, the Court asked Ioulevitch whether she was familiar with the

charges in the superseding indictment, whether she had an opportunity to discuss the charges and her decision to plead guilty with her attorney, and whether she was satisfied with the counsel her attorneys gave her. (Plea Tr. 5.) Ioulevitch answered all of the questions affirmatively:

> THE COURT: Do you know what's in the complaint?
> THE DEFENDANT: Yes.
> THE COURT: It's really an indictment. And have you discussed the indictment with your attorneys?
> THE DEFENDANT: Yes.
> THE COURT: And have they explained to you the consequences of your pleading guilty?
> THE DEFENDANT: Yes.
> THE COURT: Are you satisfied with the advice and the counsel and the representations that your attorneys have given to you?
> THE DEFENDANT: Yes.

At the plea hearing, the Court also asked Ioulevitch whether she understood the rights she was giving up by pleading guilty, and the Court specifically listed those rights. (Plea Tr. 5-9.) Ioulevitch answered that she understood. (*Id.*) Ioulevitch also explicitly denied the Court's offer of an interpreter for the proceedings:

> THE COURT: Now, Ms. Ioulevitch, Mr. Turner from the government has raised a question. You've been in the country for 21 years. Do you understand English?
> THE DEFENDANT: Yes.
> THE COURT: Would you feel more comfortable with the services of an interpreter?
> (Pause)
> THE DEFENDANT: No.
> THE COURT: Now, I told you before that you have the right to consult with your attorneys at any time I'm asking you questions, and I don't mind your consulting with Mr. Mirvis or Mr. Dayan. But if you need translation, we'd be happy to provide you with a translator. You have to understand what I'm saying because your answers to these questions are important. It's an important matter and it can be

|||
|---|---|
| | taken up here in this court or perhaps on appeal later, so it's important that you understand. If you don't understand we'll get you a translator. |
| THE DEFENDANT: | I understand. I'm just like consulting with him. I understand everything you say. |
| THE COURT: | You're sure now? |
| THE DEFENDANT: | Yeah. |

(Plea Tr. 8-9.)

The Court also reviewed the sentencing range that Ioulevitch faced prior to taking her plea:

|||
|---|---|
| THE COURT: | . . . . The total maximum of imprisonment on Counts One through Nine is 126 years with a mandatory minimum term of two years. Do you understand that that's the maximum[] that can be imposed? |
| THE DEFENDANT: | Yes. |

. . . .

|||
|---|---|
| THE COURT: | Now, have your attorneys, has Mr. Mirvis and Mr. Dayan talked to you about how offense level is calculated? |
| THE DEFENDANT: | Yes. |
| THE COURT: | And he's explained to you how the criminal history category is calculated? |
| THE DEFENDANT: | Yes. |
| THE COURT: | And has he explained to you that the guidelines are discretionary, not mandatory? |
| THE DEFENDANT: | Yes. |
| THE COURT: | And that based on the calculations that the government has done and submitted to your lawyers, the guideline range for Counts One, Two, Four, Five, Seven, and Eight is 30 to 37 months imprisonment and the guideline range for Counts Three, Six, and Nine is 24 to 72 months, of which 24 months may not be served concurrently with any other sentence. Accordingly, the guideline range for Counts One through Nine is 54 to 109 months imprisonment, of which 24 months is a mandatory sentence which may not be served concurrently with any other sentence. . . . Those are the sentencing ranges. Do you understand? |
| THE DEFENDANT: | Yes. |

5

| | |
|---|---|
| THE COURT: | I'm not making any promises to you with regard to the sentence I'll impose until I see the presentence report. Do you understand? |
| THE DEFENDANT: | Yes. |
| THE COURT: | And the sentence that I impose is strictly up to me. Do you understand? |
| THE DEFENDANT: | Yes. |

(Plea Tr. at 10–13.)

During Ioulevitch's guilty plea, she admitted

> I knowingly used identities of [Victim 1], [Victim 2], and [Victim 3], without their lawful authority. I knew that the identities belonged to them. I used their . . . identities in connection with obtain[ing] loans and credit cards from the banks. I used credit card[s] to make purchase[s] of more than [$]1,000 . . . within a year. And I did it in New York.

(Plea Tr. 18-19.) She further admitted that she used sham businesses and falsified information in the applications for the loans and credit lines in question:

| | |
|---|---|
| THE COURT: | Ms. Ioulevitch, did you hear that? When you made the application for credit cards and bank loans, you falsified information about the income levels; is that correct? |
| THE DEFENDANT: | Yes, it's correct. |
| . . . | |
| THE COURT: | Ms. Ioulevitch, in addition to the three individuals whose name you applied for credit cards, did you also apply for loans in the name of Benham Financial, Kwick Abstract, and Ital Express? |
| (Pause) | |
| THE DEFENDANT: | Yes, I applied for business loans but their names [were] used as cosigner[s]. |
| MR. TURNER: | The government would proffer that the names of the cities were used as the owners, putative owners of the businesses. |
| THE COURT: | Were they proferred as owners of the businesses? |
| THE DEFENDANT: | Yes. |

(Plea Tr. 19-22.) After determining that no one had made any promises or threats to induce Ioulevitch to take the plea, the Court found that Ioulevitch knowingly and voluntarily pleaded guilty with knowledge of the consequences. (Plea Tr. 22.)

Ioulevitch's sentencing was originally scheduled for December 14, 2011, but the Court granted Defense counsel's motion for an adjournment so that Ioulevitch could be "examined by an expert." (Dec. 14, 2011 Tr. 4.) The Court clarified that Defense counsel was not suggesting Ioulevitch was incompetent to stand trial, but only that the evaluation might inform the Court's determination of a sentence. (*Id.* at 11-12.)

Ioulevitch's sentencing occurred on January 17, 2012. Defense counsel submitted the results of Ioulevitch's psychiatric evaluation to the Court that day. The results indicated that Ioulevitch expressed symptoms of depression (for which she was medicated) but was "oriented [as] to time, place, and person" and did not present any symptoms of "psychosis." (Fax of Jan. 6, 2012, Psych. Eval.) At sentencing, for the first time, Ioulevitch noted that she was "hoping there was going to be an interpreter," but proceeded to allocute unassisted. (Sent. Tr. at 20.) Ioulevitch displayed understanding of the proceedings, articulated an apology for her conduct, and requested leniency. (*Id.* at 20-22.) Ioulevitch is clearly intelligent and well educated. Though her native language is Russian, her ability to communicate in English is quite good.

The Government recommended a sentence of 54 to 109 months, of which 24 months is mandatory. (PSR ¶ 13.) The Probation Office recommended a sentence of 60 months, finding her conduct "egregious, particularly in that she showed no regard [for] the victims who had placed a level of trust with her." (*Id.* at p. 30.) The Court sentenced Ioulevitch to 54 months in prison, the minimum guideline sentence. (Sent. Tr. 26.)

On February 19, 2013, the Second Circuit affirmed Ioulevitch's conviction by Summary Order, rejecting her argument that the Court's decision not to order a competency hearing *sua sponte* was an abuse of discretion:

> Considering the record in light of the deference owed to the district court's firsthand determination of the defendant's competency, and in light of counsel's express disclaimer that he was suggesting a lack of "competency," the district court did not abuse its discretion in determining that there was no reasonable cause to suggest *sua sponte* that Ioulevitch was incapable of understanding the proceedings or aiding in her defense.

*United States v. Ioulevitch*, 508 F. App'x 73, 75-76 (Jan. 28, 2013) (Dkt. No. 43).

## DISCUSSION

### I. Legal Standards

In a 28 U.S.C. § 2255 application, the defendant-petitioner bears the burden of proof. *See United States v. Cronic*, 466 U.S. 648, 658 (1984); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "A defendant seeking a hearing on an ineffective assistance of counsel claim 'need establish only that [s]he has a 'plausible' claim of ineffective assistance of counsel, not that [s]he will necessarily succeed on the claim.'" *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011)(quoting *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009)). But a hearing should be granted only if material facts are in dispute. *Id.* Petitioner's "application must contain assertions of fact that [the] petitioner is in a position to establish by competent evidence." *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987). The Court is not required to presume the credibility of factual assertions "where the assertions are contradicted by the record in the underlying proceeding." *Puglisi*, 586 F.3d at 214. If the judge deciding the § 2255 motion is the

same judge who presided over the underlying criminal proceeding, "a full-blown evidentiary hearing may not be necessary." *Raysor,* 647 F.3d at 494.

A criminal defendant is entitled to effective counsel "at all 'critical' stages of the criminal proceedings." *Missouri v. Frye*, 132 S.Ct. 1399, 1405 (2012). A prima facie claim for ineffective assistance of counsel requires that the petitioner show "(1) counsel's performance fell below an objective standard of reasonableness according to prevailing professional norms, and (2) it is reasonably likely that prejudice occurred—i.e., that but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 687–96). Since a plaintiff must demonstrate both parts of this *Strickland* test, courts may dispose of unmeritorious ineffective assistance of counsel claims solely on the grounds that the defendant was not prejudiced, regardless of whether the conduct was sufficiently unprofessional. *See, e.g., Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992).

"When analyzing counsel's alleged deficiency, a court must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Raysor*, 647 F.3d at 495 (quoting *Strickland*, 466 U.S. at 689). Furthermore, the standard for determining prejudice is objective, and therefore, "plaintiff may not rely on [her] subjective . . . belief that [s]he would not have pleaded guilty had [her] counsel provided adequate representation." *Cabrera v. United States*, 2013 WL 4505191, at *4 (S.D.N.Y. Aug. 23, 2013) (citing *United States v. Garcia*, 57 F. App'x 486, 489 (2d Cir. 2003). Therefore, plaintiff must provide objective evidence to satisfy her burden of proof.

## II. Analysis

### A. Ineffective Assistance of Counsel

Ioulevitch fails to show that her attorney's professional conduct fell below objective standards of reasonableness or prejudiced the outcome of her criminal proceedings. Her § 2255 motion therefore must be denied.

#### i. Plea Hearing

##### 1. Failure to Obtain a Plea Bargain

Ioulevitch asserts that counsel let a plea deal lapse that would have resulted in a downward departure. This suggestion is contradicted by Ioulevitch's own admission that "[t]here was no plea agreement," (Pl. Mem. 4), and by the government's papers submitting that no plea offer was made. (Gov. Mem. 16.) Factual assertions that are contradicted by the record are not entitled to a presumption of validity. *See Puglisi*, 586 F.3d at 214. Furthermore, plea deals are left to the discretion of the prosecutor, not Ioulevitch's attorneys, and Ioulevitch was not entitled to receive a plea bargain. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012); *United States v. Fernandez-Dilone*, 668 F. Supp. 245, 249 (S.D.N.Y. 1987). Ioulevitch cannot show on these facts that there is "a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *United States v. Gunn*, 419 F. App'x 106, 109 (2d Cir. 2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

##### 2. Failure to Request an Interpreter

Here too, the record contradicts Ioulevitch's claim that she was prejudiced by not having an interpreter. At the plea hearing, the Court specifically asked Ioulevitch whether she understood English, and understood the charges against her, to which she answered affirmatively. Ioulevitch is intelligent, well-educated, and had spent 21 years in the United

States prior to her plea hearing. She is obviously conversant in English. Nonetheless, the Court offered to provide an interpreter, and Ioulevitch explicitly declined the offer. (Plea Tr. 8.) The Court found Ioulevitch was aware of the consequences of her decision to plead guilty, and that it was a knowing and voluntary choice. (Plea Tr. 22). Ioulevitch did not suggest she needed an interpreter until six months after her guilty plea, and only at the very end of her sentencing hearing. But even after raising the issue, Ioulevitch proceeded without an interpreter and displayed her understanding of English by articulately apologizing for her behavior and requesting leniency.

Her attorneys' conduct in not requesting an interpreter, therefore, was not unreasonable, nor did it prejudice her. *See, e.g., United States v. Cruz-Castillo*, 2012 WL 1156395 (S.D.N.Y. Apr. 9, 2012).

### 3. Tardiness and Missed Deadlines

Ioulevitch argues that her attorneys were late and missed court-imposed deadlines. Counsel's conduct did not prejudice the proceedings. The Court considered all relevant submissions, even those submitted late (*see, e.g.*, Sent. Tr. 4.). Ioulevitch's sentence was based on her own conduct, not her attorneys'.

### 4. Conveying Inaccurate Sentencing Information

Ioulevitch claims her counsel provided her faulty information about the time she would serve if she pleaded guilty: namely, that her "case carried a maximum of two years," (Def. Aff. ¶ 13) and she would only have to serve 16 months. (*Id.* at ¶ 32.) But where the Court advises a defendant of her legal rights before she pleads guilty, and the defendant indicates that she understands those rights, then a defendant cannot be said to suffer any prejudice, even if her counsel failed to adequately inform her of the consequences. *See Diaz v. Mantello*, 115 F. Supp.

11

2d 411, 422 (S.D.N.Y. 2000); *Marte v. United States*, 2012 WL 2953723, at *6 (S.D.N.Y. July 20, 2012) ("Petitioner cannot show prejudice even if counsel's representations were deficient because the Court advised him about the consequences of his plea before accepting that plea."). The Court clearly explained the consequences to Ioulevitch of her guilty plea—including the maximum possible sentence, mandatory minimum, guideline range for each count, and cumulative guideline range—before she pleaded guilty. (Plea Tr. 10-13.) The Court also stressed that sentencing was at the Court's discretion. (*Id.* at 12) Ioulevitch affirmed her understanding. (*Id.*) Ioulevitch therefore cannot claim her attorneys' conduct prejudiced her.

### 5. Failure to Present Exculpatory Evidence

Ioulevitch claims counsel misadvised her to plead guilty, and counsel withheld information from the Government about third parties involved in the underlying frauds. Ioulevitch does not show how this evidence would have exculpated her.[1] Ioulevitch's claim that the evidence shows her actual innocence is contradicted by: (1) her own specific admission to the underlying facts and allegations in her guilty plea (Plea Tr. 17–20), *see Cruz-Castillo*, 2012 WL 1156395, at *4 (finding defendant's claim of innocence after a guilty plea meritless where defendant knowingly and voluntarily admitted to charges); (2) the facts reported in the PSR; and (3) her argument that counsel should have secured a favorable plea bargain, *see United States v. Martinez*, 953 F. Supp. 2d 514, 521 (S.D.N.Y. 2013) (finding that defendant's argument that counsel should have obtained a plea bargain for him undermined his claim of actual innocence). It is sheer speculation that offering evidence of other parties' involvement may have exculpated her. Since this "satisfies neither *Strickland*'s deficient performance nor prejudice prongs,

---

[1] None of the exhibits attached to the motion offer or refer to potentially exculpatory evidence.

[Petitioner's] claim must be denied." *McPherson v. Greiner*, 2003 WL 22405449, at *25 (S.D.N.Y. Oct. 22, 2003) (internal quotations omitted).

### ii. Sentencing

#### 1. Failure to Correct the PSR

Ioulevitch claims her counsel failed to correct the PSR, by including information that she was addicted to oxycodone, and this failure rendered her ineligible for the Residential Drug Program ("RDP"). (Def. Mem. at 6). Ioulevitch provides no objective evidence indicating that a correction to her PSR would have made her eligible for the RDP. Furthermore, Ioulevitch had no constitutional entitlement to the RDP. "Relief under § 2255 is limited to defects which are constitutional or jurisdictional, or which would otherwise result in a 'complete miscarriage of justice' or would be 'inconsistent with the rudimentary demands of fair procedure,'" and "an inaccurate PSR does not rise to th[is] level." *Familia-Garcia v. United States*, 1996 WL 706938, at *1 (S.D.N.Y. Dec. 9, 1996) (quoting *United States v. Timmreck*, 441 U.S. 780 (1979), and *Hill*, 368 U.S. at 428).

#### 2. Failure to Move for Downward Departure

Ioulevitch claims her counsel should have moved for a downward departure from the sentencing Guidelines based on her attempts to cooperate. But such a motion can only be granted once the Government has issued a 5K1.1 letter. No such letter was ever offered to Ioulevitch. Counsel's "failure" to make the motion was therefore not ineffective assistance. *See Soto-Beltran v. United States*, 946 F. Supp. 2d 312 (S.D.N.Y. 2013)(rejecting ineffective assistance claim based on counsel's alleged failure to secure a 5K1.1 letter because "[t]he Government has absolute discretion as to whom it chooses to enlist as a cooperator" and "the prosecution alone has the prerogative to withhold a § 5K1.1 letter at a defendant's sentencing.").

### 3. Failure to Request a Competency Hearing

Ioulevitch's claim that her counsel provided ineffective assistance by failing to request a competency hearing has already been rejected by the Second Circuit. *See Ioulevitch*, 508 Fed. Appx. at 75.

### B. Petitioner's Motion to Amend

Ioulevitch's motion to amend her § 2255 motion is meritless. Ioulevitch argues that the Supreme Court's holding in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury" requires that her case be remanded so that the Government can prove every element of identity theft and bank fraud. Ioulevitch misses the mark. She has already pleaded guilty. The charges therefore never were, nor needed to be, submitted to a jury. "The fact that a defendant has a change of heart prompted by [her] reevaluation of either the Government's case against [her] or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992).

### C. Petitioner's Motion Concerning Sentencing Disparities

Ioulevitch claims there are sentencing disparities in that females convicted of white collar crimes are sentenced more severely than males, and that a sentencing judge must take this sentencing disparity into account under 18 U.S.C. § 3553(a)(6). Ioulevitch cites "A Comparison of White Collar Crime Sentence Lengths Between Males and Females" (the "Comparison"),[2] which purportedly shows that females receive average sentences 155% more severe than what the Guidelines recommend.

---

[2] The Comparison is dated September 16, 2013, and is available at www.CultureQuantiX.com.

The Comparison provides no reason to change Ioulevitch's sentence.[3] Ioulevitch does not point to male comparators that received a lesser sentence for committing the same crimes she did. Most importantly, gender was not a factor in Ioulevitch's sentence. Ioulevitch's 54-month sentence represents the mandatory minimum of 24 months on counts three, six and nine (identity theft), which must be served consecutively, and the minimum guideline sentence of an additional 30 months for the remaining counts (bank fraud). In other words, her sentence was at the very bottom range of the Guidelines. A sentence that falls within the guidelines range is assumed to "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007). The Court considered these § 3553 factors in sentencing Ioulevitch. Considering the charges to which she pleaded, the breach of trust, and the number of incidents, among other factors, the sentence was reasonable as a matter of law.

### D.   Petitioner's Motion for a Reduction of Her Sentence

Ioulevitch's motion for a sentence reduction fails for similar reasons. Ioulevitch argues the Court erred in failing to depart from the guidelines based on her family circumstances. The Court, however, did take these circumstances into account. (Sent. Tr. at 6–7, 14–15, 20, 28.) Ioulevitch urges she should be sentenced to "the lowest sentence that should be applied," quoting the statute's "sufficient, but not greater than necessary" language. 18 U.S.C. § 3553(a). The Court adequately accounted for this concern, stating on record its belief that a Guideline sentence of 30 months to run consecutively with the mandatory minimum sentence of 24 months "is sufficient but not greater than necessary" to achieve the objectives of § 3553(a). (Sent. Tr. at 26.)

---

[3] The authors admit the Comparison is based on a "very small sample size" (Comparison at 2)—29 females and 31 males sentenced to a variety of white collar crimes—and there is no way to determine whether the sentence each inmate received was based on personal factors.

### E.  Petitioner's Other Motions

Ioulevitch moves for release pending adjudication of her § 2255 motion, appointment of counsel, and leave for discovery to support her ineffective assistance claim. Since the Court denies her § 2255 motion, these other motions are moot or futile, and are denied.

The Court has considered Ioulevitch's other arguments. They too are without merit.

### CONCLUSION

For all of the foregoing reasons, the Court denies Petitioner's § 2255 motion and subsequent motions. As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253. The Clerk of Court is directed to enter judgment and close this case.

Dated: New York, New York
       May 21, 2014

                                                        SO ORDERED

                                                        _____
                                                        PAUL A. CROTTY
                                                        United States District Judge

Copies mailed to:

Inna Ioulevitch, #63003-054
FPC Route 37
Danbury, CT  06811